**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BRIAN E. SINGER,

                *Plaintiff*,

    v.

CONTINENTAL CASUALTY COMPANY,

                *Defendant*.
------------------------------------------------------
CONTINENTAL CASUALTY COMPANY,

                *Counter-Plaintiff*,

    v.

BRIAN SINGER, and ALLIANCE
ADJUSTMENT GROUP, INC.,

                *Counter-Defendants*.

CIVIL ACTION
No. 16-01138

**PAPPERT, J.**                                              **June 24, 2016**

## MEMORANDUM

       Brian Singer ("Singer"), a licensed public insurance adjuster for Alliance Adjustment

Group, Inc. ("Alliance"), sued Continental Casualty Company ("Continental") for breach of

contract and bad faith.  Singer's claims arise from Continental's alleged refusal to defend and/or

indemnify him in two underlying lawsuits.  Continental filed counterclaims against Singer and

Alliance seeking a declaratory judgment that it has no duty to defend or indemnify in the

underlying suits.[1]  Alliance then filed a counterclaim for bad faith against Continental.  Singer

and Continental now move for judgment on the pleadings.  The Court denies both motions.

---

[1]      Continental filed a motion to join Alliance as a counterclaim defendant on April 12, 2016.  (ECF No. 8.)
The Court granted the motion on May 2, 2016.  (ECF No. 12.)

## I.

The plaintiffs in the underlying suits allege that Singer negligently performed his duties as a public adjuster while assessing and inspecting a claimed loss at a home owned by Mark Zinman ("Zinman") on October 9, 2013.  (Barberio Compl. ¶¶ 34–41, ECF No. 5-2 at Ex. C.)[2] During the inspection, Singer identified and documented the existence of a damaged gas line. (*Id.* ¶¶ 24–25.)  On November 4, 2013, gas leaking from the damaged line allegedly caused an explosion, resulting in one death and other serious injuries.  (*Id.* ¶¶ 29–32.)  The plaintiffs subsequently filed suit against Singer, alleging that he acted negligently by: (1) failing to close the valve of a propane tank connected to the gas line; and (2) failing to post warnings about the gas line.  (*Id.* ¶¶ 26–27.)

At the time of the explosion, Alliance was insured under a general liability policy issued by Continental.  (Alliance Insurance Policy ("Alliance Policy"), ECF No. 7 at Ex. 1.)  The policy contained a Professional Services Exclusion which excluded coverage for "'[b]odily injury' . . . caused by the rendering or failure to render any professional service."  (*Id.*)  The exclusion included, but was not limited to:

> (1)     Legal, accounting or advertising services;
>
> (2)     Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
>
> (3)     Supervisory, inspection or engineering services[.]

(*Id.*)  The adjustment contract between Alliance and Zinman provided that Singer was "to advise and assist in the adjustment of [an] insurance claim" at Zinman's home.  (Public Adjuster Contract ("Adjustment Contract"), ECF No. 5-2 at Ex. C.)  In addition to the payment of a contingency fee, Zinman agreed to reimburse Singer for "extraordinary expenses above and

---

[2]     The allegations in both underlying complaints are the same in all material respects.  The Court accordingly references only one complaint.

beyond the normal costs of doing business, such as expert witness fees and expenses, engineer and inspection fees." (*Id.*)  The "Scope of Damage Confirmation" portion of the contract required Zinman's signature "to ensure that Alliance . . . prepare[d] an estimate of damages that addresse[d] all of the repairs needed, yet d[id] not include any repairs that are not directly or indirectly associated with the claim." (*Id.*)

At his deposition, Singer testified that he would occasionally tell an insured not to make permanent repairs until the insurer conducted its own inspection.  (Singer Dep. 105:24–106:5, ECF No. 5-3.)  He testified that "if someone makes the repair prior to my showing it to the insurance company, the insurance company is not going to pay for it.  Those type [sic] of situations happen all the time." (*Id.* 106:6–12.)  When asked whether he told Zinman to hold off on repairing the damaged gas line until the insurer could inspect, Singer testified:

> No, I never told him he couldn't have it fixed.  But as I explained before, it's his—it's his prerogative . . . . If I had shown it to them and it was fixed already, I don't know whether they would have paid it or not.  But I never told him not to get it fixed.

(*Id.* 129:5–18.)  Singer testified that the insurer was scheduled to conduct its inspection just days after the explosion occurred.  (*Id.* 62:21–63:4.)

## II.

### A.

A motion for judgment on the pleadings will be granted only if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citing *Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)).  The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.*  When a nonmoving party's answer denies a material allegation, that

denial creates a question of fact that prevents the Court from granting a motion for judgment on

the pleadings.  *See Citizens Ins. Co. of Am. v. Selective Way Ins. Co.*, 98 F. Supp. 3d 782, 788

(E.D. Pa. 2015) (citing *Inst. for Scientific Info., Inc. v. Gordon & Breach, Science Publishers,*

*Inc.*, 931 F.2d 1002, 1008 (3d Cir. 1991)).

A party may file a motion for judgment on the pleadings "[a]fter the pleadings are

closed—but early enough not to delay trial."  FED. R. CIV. P. 12(c).  "The pleadings are closed

after an answer is filed, along with a reply to any additional claims asserted in the answer."

*Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (citation

omitted).  In deciding a Rule 12(c) motion, the court may consider the pleadings, any attached

exhibits, matters of public record and any undisputedly authentic documents attached to the

motion if the plaintiff's claims are based on the documents.  *See id.* (citations omitted).

### B.

The duty to defend is broader than the duty to indemnify.  *See Sikirica*, 416 F.3d at 225.

Accordingly, "there is no duty to indemnify if there is no duty to defend."  *Id.*  In determining

whether Continental owes a duty to defend Singer and Alliance in the underlying lawsuits, the

Court must examine the allegations in the underlying complaints and the language of the

Continental policy.  *See State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 110 (3d

Cir. 2009) (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)); *see*

*also Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 247 (Pa. 1988).

If the complaints comprehend an injury "which may be within the scope of the policy, the

company must defend the insured until the insurer can confine the claim to a recovery that the

policy does not cover."  *United Servs. Auto. Ass'n v. Elitzky,* 517 A.2d 982, 985 (Pa. Super. Ct.

1986) (citing *Vale Chem. Co. v. Hartford Acc. & Indem.,* 490 A.2d 896, 900 (Pa. Super. Ct.

1985)).  However, "[t]o prevent artful pleading designed to avoid policy exclusions, it is

necessary to look at the factual allegations in the complaint, and not how the underlying plaintiff

frames the request for relief."  *Allstate Ins. Co. v. Thompson*, No. 05-cv-5353, 2006 WL

2387090, at *2 (E.D. Pa. July 19, 2006) (quoting *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743,

745 (Pa. 1999)).  Indeed, "it is the substance, not the form, of the allegations that is the focus of

the coverage inquiry."  *Id.*

### III.

The central issue in the parties' motions is whether Singer's alleged failures—i.e., failing

to close the valve of the propane tank and/or failing to post warning signs regarding the damaged

gas line—fall under the professional services exclusion.  The Third Circuit Court of Appeals in

*Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 984 (3d Cir. 1988), found that "professional

services" are "more than . . . act[s] flowing from mere employment or vocation."  The Third

Circuit observed that:

> [T]he act or service must be such as exacts the use or application of special
> learning or attainments of some kind.  The term "professional" . . . means
> something more than mere proficiency in the performance of a task and implies
> intellectual skill as contrasted with that used in an occupation for production or
> sale of commodities.  A "professional" act or service is one arising out of a
> vocation, calling, occupation, or employment involving specialized knowledge,
> labor, or skill, and the labor or skill involved is predominantly mental or
> intellectual, rather than physical or manual.  In determining whether a particular
> act is of a professional nature or a "professional service" we must look not to the
> title or character of the party performing the act, but to the act itself.

*Id.* (citations omitted).  Accordingly, courts must examine the character of the alleged conduct

and the nature of the services performed by the insured to determine whether the insured's

liability flowed directly from a professional activity.  *See Wimberly Allison Tong & Goo, Inc. v.

Travelers Prop. Cas. Co. of Am.*, 352 F. App'x 642, 647 (3d Cir. 2009) (citing *Harad*, 839 F.2d at

984–85).

5

The Court cannot, on this record, determine as a matter of law that no material issues of fact exist.  Singer, Alliance and Continental all deny each other's material allegations regarding both the home inspection and Singer's duties as a public adjuster.  (*Compare* Singer's Am. Compl. ¶¶ 6, 13–17, ECF No. 5, *with* Continental's Answer ¶¶ 6, 13–17, ECF No. 7.)  The adjustment contract between Alliance and Singer arguably provided that Singer was responsible in some way for identifying certain repairs.  (*See* Adjustment Contract (ensuring that Singer "prepare[d] an estimate of damages that addresse[d] all of the repairs needed, yet d[id] not include any repairs that are not directly or indirectly associated with the claim.").)  Whether Singer had to make repairs, hire someone to make repairs or simply notify Zinman that repairs were needed within a certain timeframe remains unclear.  The extent to which the allegations in the underlying complaints "flow directly" from Singer's professional services as a public adjuster is a disputed issue of fact at this juncture.  Entry of judgment on the pleadings is accordingly premature as to both the duty to defend and duty to indemnify claims.[3]  *See, e.g.*, *Hartford Cas. Ins. Co. v. Dental Org. for Conscious Sedation, LLC*, No. 10-cv-3483, 2011 WL 1315486, at *2 (E.D. Pa. Apr. 1, 2011) ("If there is no duty to defend, there, of course, is no duty to indemnify.") (citing *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. Ct.1997)).

## IV.

The Court similarly denies the parties' motions for judgment on the pleadings as to the bad faith claims.  A claim for bad faith requires a demonstration that: (1) the insurer lacked a

---

[3]      The Court is aware of only one case in this Circuit which has ruled on the applicability of a professional services exclusion at the judgment on the pleadings stage.  *See Am. W. Home Ins. Co. v. Donnelly Distribution, Inc.*, No. 11-cv-1415, 2011 WL 3330655 (E.D. Pa. Aug. 2, 2011).  Perhaps because the inquiry into the "nature" of a profession is inherently factual, most of the cases within this Circuit address the exclusion's applicability at summary judgment.  *See, e.g.*, *Feszchak v. Pawtucket Mut. Ins. Co.*, 316 F. App'x 181, 183 (3d Cir. 2009) (affirming district court's summary judgment decision regarding the professional services exclusion); *Sentinel Ins. Co. v. Monarch Med Spa, Inc.*, 105 F. Supp. 3d 464, 474 (E.D. Pa. 2015) (granting summary judgment on a declaratory judgment action based on the applicability of the professional services exclusion); *Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc.*, 803 F. Supp. 2d 339, 349 (E.D. Pa. 2011) (denying summary judgment on a declaratory judgment action based on the applicability of the professional services exclusion).

reasonable basis for denying benefits; and (2) the insurer knew or recklessly disregarded its lack of reasonable basis. *See Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999), *aff'd*, 234 F.3d 1265 (3d Cir. 2000) (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)). Both elements must be proven by clear and convincing evidence. *See id.* (citing *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 750 (3d Cir. 1994)).

Generally, "a bad faith claim based solely on an underlying contractual claim . . . will fail if a court or jury determines that the insurer did not have a duty defend." *Rohm & Haas Co. v. Utica Mut. Ins. Co.*, No. 07-cv-584, 2008 WL 2517176, at *2 (E.D. Pa. June 23, 2008) (citing *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 202 (3d Cir. 2006)). Given the denial of both motions as to the duty to defend issue, *see supra* Part III, the Court must similarly deny both motions as to the bad faith claims.

## V.

Singer also contends that the doctrine of judicial estoppel bars Continental from taking the position that Singer is not covered under the policy because Continental is now defending both Singer and Alliance in the underlying suits. Judicial estoppel is a "harsh remedy" that may only be imposed if: (1) a party asserts a position that is irreconcilably inconsistent with one they asserted in a prior proceeding; (2) the party changed his or her position in bad faith; and (3) the use of judicial estoppel is tailored to address the specific harm caused by the inconsistent representation. *Castillo v. Coca-Cola Bottling Co. of E. Great Lakes*, No. 06-cv-183, 2006 WL 1410045, at *2 (E.D. Pa. May 22, 2006) (citing *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777–78 (3d Cir. 2001)).

Continental is providing a defense to Alliance and Singer in the underlying suits pursuant to a reservation of rights. (Continental's Answer ¶¶ 29, 44.) Where an insurer assumes the duty

to defend subject to a reservation of rights, it "does not waive its claims that a policy exclusion applies." *Am. Nat. Prop. & Cas. Companies v. Hearn*, 93 A.3d 880, 887 (Pa. Super. Ct. 2014) (citation omitted). Indeed, "[i]t is common practice for insureds and insurance companies to file declaratory judgment actions when there is a dispute regarding whether the insurer has a duty to defend and/or indemnify." *Id.* (citation omitted). The Court additionally has denied both motions with respect to bad faith, one of the essential elements of applying judicial estoppel. *See supra* Part IV. This argument accordingly fails. An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.